IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CLIFTON W. DEVENING, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.: 3:06-cv-273 DRH |
| | ) | |
| JOHN CHAMBERS, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

This matter has been referred to Magistrate Judge Donald G. Wilkerson by Chief United States District Judge David R. Herndon pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Petition for a Writ of Habeas Corpus filed by the Petitioner, Clifton W. Devening on March 31, 2006 (Doc. 1). For the reasons set forth below, it is **RECOMMENDED** that the Petition be **DENIED**, that this matter be **DISMISSED**, and that the Court adopt the following findings of fact and conclusions of law:

## FINDINGS OF FACT

On August 9, 1994, Petitioner Clifton Devening, driving a 1980 Pontiac Grand Prix, collided with a motorcycle driven by Willard Allen on an Illinois highway. Willard Allen died from injuries sustained in the accident. On May 30, 1997, nearly three years later, Petitioner was indicted on two counts of first degree murder. After trial, a jury found him guilty of both counts. The trial court dismissed Count 2 and on October 23, 1998, sentenced Petitioner to 40 years' imprisonment on Count 1.

Evidence at the trial established that immediately following the accident, Illinois State Police trooper and accident reconstructionist Barbee Stalker arrived at the scene to conduct an investigation. After initial analysis of the accident scene, she ordered the vehicles towed to a

salvage yard. She placed a "hold" on the vehicles so that she could examine them further as part of her investigation. In November 1994, Stalker completed the investigation and notified the salvage yard to release the hold on the vehicles. Petitioner never learned that the hold had been released. Between the time of the accident and the indictment, the vehicles were lost or destroyed by the salvage yard (Doc. 12-14, pp. 1-2).

*Direct Appeal*

Petitioner, represented by counsel, raised five issues on direct appeal: 1) the evidence presented to the jury was insufficient to establish his guilt beyond a reasonable doubt; 2) the trial court erred in not dismissing the indictment where primary evidence–the vehicles involved in the accident–were either lost or destroyed and could not be examined by his expert; 3) his counsel was ineffective for not making a motion for discharge of the indictment based upon prejudicial preindictment delay; 4) the trial court erred when it did not respond to the jury's questions during deliberations to correct a misunderstanding of the law as described in the jury instructions; and 5) his sentence was excessive (Doc. 12, Exh. B). In a written order dated March 13, 2001, the Appellate Court of Illinois affirmed the conviction on all grounds (Doc. 12, Exh. C).

Petitioner, with assistance of counsel, filed a Petition for Leave to Appeal ("PLA") in the Supreme Court of Illinois, raising three issues: 1) the trial court erred in denying a motion to dismiss the indictment where evidence was lost or destroyed; 2) his counsel was ineffective for not making a motion for discharge of the indictment based upon prejudicial preindictment delay; and 3) the trial court erred in when it did not respond to the jury's questions during deliberations to correct a misunderstanding of the law in the jury instructions (Doc. 12, Exh. D). The Supreme Court of Illinois summarily denied leave to appeal on February 5, 2003 (Doc. 12, Exh. E).

*Collateral Review*

On June 22, 2001, Petitioner filed a *pro se* petition for post-conviction relief in the trial court (Doc. 12, Exh. F). He raised the following issues: 1) trial counsel was ineffective for failing to file a timely motion to suppress evidence; 2) trial counsel was ineffective for failing to file a timely notice of a discovery violation; 3) he was denied his right to a speedy trial; 4) trial counsel was ineffective for failing to file a timely motion for discharge of the indictment due to the speedy trial violation; 5) trial counsel was ineffective for failing to submit Illinois Pattern Jury Instructions in answer to the jury's question during deliberation; 6) trial counsel was ineffective for failing to present evidence and witness testimony on the motion to dismiss the indictment; and 7) appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel on grounds 1, 2, 4, 5, and 6 (Doc. 12, Exh. F). The trial court dismissed the petition for post-conviction relief as frivolous and patently without merit (Doc. 12, Exh. J).

On appeal of that dismissal, Petitioner's appointed counsel filed a motion to withdraw as counsel on appeal pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and discussed the same seven issues raised by Petitioner in his pro se post-conviction petition (Doc. 12, Exh. G). Petitioner filed a *pro se* objection to his counsel's motion to withdraw, arguing that his post-conviction appellate counsel was ineffective (Doc. 12, Exh. H). Petitioner also filed a *pro se* brief on the appeal of the denial of his post-conviction petition, in which he raised two additional issues, 1) the trial court erred in summarily dismissing his post-conviction petition without reviewing and considering the full record of his case, and 2) the trial court erred in dismissing his post-conviction petition without appointing post-conviction counsel or holding an evidentiary hearing (Doc. 12, Exh. I).

On October 1, 2004, the Appellate Court of Illinois granted post-conviction appellate

counsel's motion to withdraw and affirmed the dismissal of the post-conviction petition (Doc. 12, Exh. J). Petitioner filed a PLA in the Supreme Court of Illinois, raising three grounds for relief: 1) the trial court denied his due process rights in summarily dismissing his post-conviction petition without reviewing and considering the full record of his case; 2) the trial court erred in dismissing his post-conviction petition without appointing post-conviction counsel or holding an evidentiary hearing; and 3) the trial and appellate court abused their discretion by departing from controlling legal standards (Doc. 12, Exh. K). The Supreme Court of Illinois denied the PLA on March 30, 2005 (Doc. 12, Exh. L).

*Petition for Relief from Judgment*

On June 3, 2003, Petitioner filed a *pro se* petition for relief from judgment in the trial court under 735 ILCS 5/2-1401 (Doc. 12, Exh. M). Petitioner argued that newly discovered evidence of Illinois State Police policies indicated that Barbee Stalker perjured herself when testifying about State Police procedures in a hearing on a pretrial motion. Based on this evidence, Petitioner argued that he was entitled to relief from judgment against him. Petitioner appealed the denial of the petition for relief from judgment to the Appellate Court of Illinois on January 26, 2004 (Doc. 12, Exh. N). He raised two issues: 1) the trial court abused its discretion in denying his petition for relief from judgment in the face of evidence that the state's witness perjured herself, and 2) the trial court failed in its duty to investigate claims and pursue justice. The Illinois Appellate Court affirmed the trial court's denial of the petition for relief from judgment (Doc. 12, Exh. O).

*Federal Habeas Petition*

Petitioner filed a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court on March 31, 2006 (Doc. 1). The Court construes the petition to raise the following

three grounds for relief:

1. The state denied Petitioner due process of law by waiting three years after the accident that caused the death of Willard Lee Allen to charge Petitioner with a crime.

2. The state denied Petitioner due process of law by losing or destroying the vehicles involved in the accident, failing to produce them for inspection by his expert witness, and by failing to meet its obligation to preserve all exculpatory evidence that could tend to negate Petitioner's guilt.

3. Petitioner was denied a fair trial because the state failed to provide enough paint chip samples from the cars involved in the accident for adequate testing.

(Doc. 1, §§ 21-25).

In a Response, filed on September 18, 2006, the Respondent argues that Claims 1 and 3 are procedurally defaulted and Claim 2 is without merit (Doc. 12).

## CONCLUSIONS OF LAW

An inmate in state custody may challenge his underlying state conviction in a petition for habeas corpus relief filed pursuant to 28 U.S.C. §2254. Any claim that has been adjudicated on the merits in a state court proceeding is governed by 28 U.S.C. §2254(d). *Canaan v. McBride*, 395 F.3d 376, 382 (7th Cir. 2005). This code section provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**PROCEDURAL DEFAULT**

Prior to addressing the merits of the petition, the Court must determine whether any claims have been procedurally defaulted, thereby precluding review by this Court. Procedural default can occur when "a petitioner does not adequately present a claim to the state court" and there is no showing of "cause and prejudice for the default or . . . that a failure to grant him relief would work a fundamental miscarriage of justice." *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005) (citation omitted); *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (fundamental miscarriage equals "the conviction of an innocent person."); *see also Edwards*, 529 U.S. at 451-452. A petitioner must "fairly present" his claim before the state court in order to allow the state the opportunity to correct any Constitutional violations. *Sanders v. Cotton*, 398 F.3d 572, 581 (7th Cir. 2005) (citations omitted). This fair presentment requirement means that the petitioner must invoke "one complete round of the State's established appellate review process" for each claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005). He must present "operative facts and controlling legal principles" for the state court to review. *Cotton*, 398 F.3d at 580.

"A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Bintz*, 403 F.3d at 863 (quotation marks and citation omitted). The burden is upon the respondent to show that the petitioner has procedurally defaulted his claims. The Respondent argues that Grounds 1 and 3 are procedurally defaulted. The Court will address Ground 3 first.

***Ground 3***

Respondent argues that Ground 3 is procedurally defaulted because Petitioner did not raise

it in state court. The Court agrees. A review of the state court record indicates that Petitioner did not raise Ground 3–that the state did not preserve enough paint samples from the vehicles involved in the accident–before any Illinois state court. The claim is therefore procedurally defaulted.

Petitioner presents no excuse for the procedural default of the claim. "When a petitioner does not adequately present a claim to the state courts, he may obtain federal habeas relief only upon a showing of cause and prejudice for the default or upon a showing that a failure to grant him relief would work a fundamental miscarriage of justice." *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005) (quotation marks and citation omitted). In order to establish cause, Petitioner must show that "an external impediment" prevented him from presenting his arguments before the state courts. See *Bintz v. Bertrand*, 403 F.3d 859, 864 (7th Cir. 2005). In order to show prejudice, he must present evidence that the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (quotations marks, citation, and emphasis omitted). Petitioner has not shown or even made an argument that any external force prevented him from fairly presenting his claims to the state courts. He further has not met the high burden of showing that the errors at his trial, if any, worked to his actual and substantive disadvantage.

Nor has Petitioner shown or argued that there has been a fundamental miscarriage of justice, which requires a showing that a constitutional violation occurred which "probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To meet this burden, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* This requires "a stronger showing than that needed to establish prejudice." *Id.* Petitioner has not, therefore, made a showing to overcome the procedural

default of the claim. Accordingly, it is **RECOMMENDED** that Ground 3 be **DENIED**.

*Ground 1*

Respondent argues that Petitioner procedurally defaulted Ground 1 because he raised it in state court as a claim of ineffective assistance of counsel for failing to seek dismissal of the indictment based on preindictment delay, and in his habeas petition here he raises the claim as a violation of due process. For the reasons set forth below, the Court finds that Ground 1 is not procedurally defaulted.

Petitioner claims in Ground 1 that the state violated his due process rights in waiting three years after the accident that caused the death of Willard Lee Allen to charge Petitioner with a crime. On direct appeal, Petitioner raised the claim that his trial counsel was ineffective for failing to seek dismissal of the indictment due to excessive delay. In his appellate brief, Petitioner also attacked the merits of the underlying claim, arguing that the excessive preindictment delay violated his due process rights. Petitioner urged the Appellate Court to review the issue of denial of due process for plain error pursuant to Illinois Supreme Court Rule 615(a), despite Petitioner's failure to raise the question in the trial court. If the Court would not in its discretion review the claim for plain error, Petitioner asked that it be considered an issue of ineffective assistance of counsel for failing to seek dismissal of the indictment based on preindictment delay (Doc. 12-5, pp. 13-15).[1] In affirming the conviction, the Illinois Appellate Court addressed the underlying due process claim on the merits, not as an issue of ineffective assistance of counsel:

In order for preindictment delay to be grounds for a dismissal of an indictment, the

---

[1]The Court notes that the statement of question presented and heading in the appellate brief state the claim in terms of ineffective assistance of counsel. The discussion of the claim, however, raises the due process violation and asks the court to review it for plain error.

> defendant must clearly show actual and substantial prejudice. *People v. Lawson*, 67 Ill.2d 449, 459, 367 N.E.2d 1244, 1248 (1977). Defendant did not suffer actual or substantial prejudice from the delay. Defendant's expert was able to testify in a persuasive manner even without the wrecked vehicles, and defendant was not prevented from presenting any evidence crucial to his exoneration by the delay.

(Doc. 12-6, p.4).

Petitioner raised the same claim in the same manner in his Petition for Leave to Appeal in the Supreme Court of Illinois. That is, he first requested that the Court review the due process violation for plain error, and in the alternative that it be reviewed as a claim of ineffective assistance of counsel. The Supreme Court of Illinois summarily denied Petitioner's request for leave to appeal.

Petitioner raised the due process claim on its merits in his direct appeal to the Illinois Appellate Court. *See Malone v. Walls*, 538 F.3d 744, 753-54 (7th Cir. 2008) (looking to claims as set forth in petitioner's brief before the state appellate court in determining whether a habeas petitioner fairly presented constitutional claim to the state court) (citing *Dye v. Hofbauer*, 546 U.S. 1, 3-4 (2005)). More importantly, the Illinois Appellate Court ruled on the merits of the claim and did not consider it as an issue of ineffective assistance of counsel. *See Malone*, 538 F.3d at 756 (holding that federal habeas review is not precluded where state court recognizes federal claim and resolves it on the merits). Based on the state court's resolution of the due process claim on its merits, the Court finds that the federal due process claim was fairly presented to the state courts for review. Because Petitioner raised the due process claim on its merits in his petition for leave to appeal in the Supreme Court of Illinois, the Court finds that the due process claim has received one complete round of state court review. As such, this Court is not precluded from reviewing the claim

on its merits.[2]

**MERITS REVIEW**

The Court will review Petitioner's Grounds 1 and 2 on the merits. Petitioner does not allege the Illinois Appellate Court's decisions in these claims were based on an unreasonable determination of the facts, but rather that the appellate court's decisions were contrary to established law. Therefore, under 28 U.S.C. § 2254(d)(1), to demonstrate entitlement to habeas relief, Petitioner must show the Illinois Appellate Court's decisions (1) were contrary to clearly established Federal law; or (2) involved an unreasonable application of Federal law.

A state court's decision is "contrary to" clearly established Supreme Court precedent when it reaches a legal conclusion that is opposite to a legal conclusion announced by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Owens v. Frank*, 394 F.3d 490, 496-497 (7th Cir. 2005). A state court's conclusion is an "unreasonable application" of Supreme Court precedent when the state court identifies the correct legal rule as determined by the Supreme Court, but unreasonably applies it to the facts of the case, unreasonably extends a legal principle from existing precedent, or refuses to extend that principle to a new context where it should apply. *Owens*, 394 F.3d at 496-497 (quoting *Williams*, 529 U.S. at 405). As the Supreme Court has stated:

> We have made clear that the "unreasonable application" prong of §2254(d)(1) permits a federal habeas court to "grant the writ if the

---

[2]Respondent contends that the Court's review of Ground 1 is precluded by *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004), in which the Seventh Circuit held that "an assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues." In light of the Court's findings that Petitioner raised the due process claim in his appellate brief and that the Illinois Appellate Court reviewed the claim on the merits, the Court disagrees that review is precluded by *Lewis*. *See Malone*, 538 F.3d at 755 (finding that *Lewis* did not preclude federal habeas review where claim was fairly presented to state court).

> state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of petitioner's case. In other words, a federal court may grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced." In order for a federal court to find a state court's application of our precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous. The state court's application must have been "objectively unreasonable."

*Wiggins v. Smith*, 539 U.S. 510, 520-521 (2003) (citations omitted); *see also Owens*, 394 F.3d at 496-497. The writ may not issue merely because the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable. *Williams*, 529 U.S. at 411; *see also Owens*, 394 F.3d at 497. The burden is on the Petitioner to show that he is entitled to relief. *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004).

***Ground 1***

At the time petitioner's conviction became final, the law was clearly established that preindictment delay does not violate due process unless actual and substantial prejudice results and the government intentionally delayed the indictment in order to gain a tactical advantage over the defendant. *See United States v. Marion*, 404 U.S. 307, 324-26 (1971)*; United States v. Miner*, 127 F.3d 610, 615 (7th Cir. 1997). Speculative prejudice is insufficient to establish a violation of due process. A defendant must show actual prejudice based on allegations that are "specific, concrete, and supported by the evidence." *Aleman v. The Honorable Judges of the Circuit Court of Cook County*, 138 F.3d 302, 310 (7th Cir. 1998). Moreover, prejudice by itself is not sufficient to demonstrate a violation of due process; the court must also consider the reasons for the delay. *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (holding that due process is not violated where delay was caused by extensive investigation, even if some prejudice resulted).

The holding of the Illinois Appellate Court that Petitioner did not suffer actual or substantial prejudice from the preindictment delay was not contrary to or an unreasonable application of Supreme Court precedent.[3] The court stated the correct controlling legal standard: that Petitioner would have to show actual and substantial prejudice.[4] The appellate court also stated its reasons for finding that Petitioner did not suffer actual or substantial prejudice, namely that his expert was able to testify persuasively without inspection of the vehicles, and the delay did not prevent Petitioner from presenting exonerating evidence. The Illinois Appellate Court did not address the reasons for the delay in its opinion, but having found that Petitioner suffered no prejudice, the court was not required to analyze whether the prosecution used the delay to gain tactical advantage over the defendant. Petitioner does not point to any evidence tending to show that he suffered more than speculative prejudice from the delay, which might indicate that the appellate court's findings were objectively unreasonable. Petitioner argued that between the time of the accident and his indictment the vehicles were destroyed and he was therefore prejudiced because his expert could not personally inspect them. Petitioner has made no showing that his expert would have presented exonerating evidence had he been allowed to inspect the vehicles, and thus no showing that any prejudice he suffered was more than speculative. Thus, the undersigned finds that the Illinois Appellate Court's application of Supreme Court precedent regarding preindictment delay was neither contrary to nor an unreasonable application of clearly established federal law. Accordingly, it is **RECOMMENDED** that Ground 1 of the petition be **DENIED**.

---

[3] See the appellate court's holding, p. 9, above.

[4] A state court is not required to cite United States Supreme Court opinions as long as neither its reasoning nor its resulting decision contradicts clearly established Supreme Court precedent. *See Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam).

*Ground 2*

The Illinois Appellate Court held the following:

Under Illinois law, in some circumstances due process may be violated even if evidence is destroyed in good faith. In *People v. Newberry*, 166 Ill. 2d 310, 652 N.E.2d 288 (1995), the Supreme Court of Illinois upheld a trial court's dismissal of charges of illegal possession of a controlled substance. In *Newberry* the alleged controlled substance seized from the defendant was destroyed by a police technician on the mistaken belief that all charges against the defendant had been resolved. *Newberry*, 166 Ill. 2d at 313, 652 N.E.2d at 290. The court found that the destroyed evidence was essential to establishing Newberry's guilt or innocence and that, therefore, a finding of bad faith in the destruction of the evidence was unnecessary. *Newberry*, 166 Ill. 2d at 316, 652 N.E.2d at 291.

The *Newberry* court distinguished the situation presented to it from prior decisions made by the United States Supreme Court that required a finding of bad faith in the destruction of evidence as a prerequisite to a dismissal on due process grounds. The court first distinguished *Arizona v. Youngblood*, 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333 (1988). In *Youngblood*, the state failed to promptly test samples found on a rape victim's clothes or to properly refrigerate the clothing for tests by the defendant's expert. *Youngblood*, 488 U.S. at 58, 102 L. Ed.2d at 281, 109 S. Ct. at 337. Unlike *Youngblood*, in *Newberry* the makeup of the alleged controlled substance was essential to and determinative of the outcome of Newberry's case. *Newberry*, 166 Ill. 2d at 315, 652 N.E.2d at 291. The court also distinguished *California v. Trombetta*, 467 U.S. 479, 81 L. Ed.2d 413, 104 S. Ct. 2528 (1984), where the state discarded breath samples of defendants facing charges of driving under the influence. Compared to *Trombetta*, in *Newberry* the laboratory test of the controlled substance did not have as high a degree of accuracy, and Newberry did not have an alternative means of demonstrating his innocence, as the destruction of the alleged controlled substance prevented the defendant from performing a test equal in credibility to the State's. *Newberry*, 166 Ill. 2d at 316, 652 N.E.2d at 291.

In addition, a discovery request may place the State on notice that evidence should be preserved. The *Newberry* court further distinguished *Youngblood* and *Trombetta* by the fact that *Newberry* had made a discovery request for the destroyed substance prior to its destruction. The court stated that the State had been put on notice the evidence must be preserved and that, therefore, no finding of bad faith was necessary. *Newberry*, 166 Ill. 2d at 317, 652 N.E.2d at 292.

Defendant further cites to *People v. Coleman*, 307 Ill. App. 3d 930, 718 N.E.2d 1074 (1999), in which an alleged controlled substance underlying a prosecution for possession of a controlled substance had been destroyed. In Coleman, although a first appearance had been set, the indictment of the defendant was not made until

close to five years after the filing of the complaint. *Coleman*, 307 Ill. App. 3d 932, 718 N.E.2d at 1075. The defendant made a discovery request for the alleged controlled substance four days after the indictment. The second district, while citing to *Newberry*, stated that the discovery request was timely, as it could not have been made prior to the indictment and that, therefore the evidence should be barred even though there was no bad faith. *Coleman*, 307 Ill. App. 3d at 936, 718 N.E.2d at 1078.

This case is similar to the Supreme Court cases requiring a showing of bad faith. There are marked differences between the evidence destroyed in *Newberry* and *Coleman* and the case at hand. In contrast to the pivotal role of the chemical content of the substances in *Newberry* and *Coleman*, the physical structure of the vehicles was not the sole basis for bringing charges against defendant. Like the clothing sample in *Youngblood* and unlike the alleged controlled substances in *Newberry* and *Coleman*, the missing vehicles were at best only potentially useful to defendant. Defendant's expert testified, "[I]t's always an advantage to see the real vehicles," but the expert did not complain that having the vehicles was crucial to exonerating defendant. Indeed, defendant's expert was able to testify in a persuasive manner using the photographs and measurements made by the State's expert. *See People v. Blaylock*, 311 Ill. App. 3d 399, 723 N.E.2d 1233 (2000), appeal allowed, 189 Ill. 2d 663, 731 N.E.2d 766 (2000) (a showing of bad faith was required when the majority of trial exhibits were lost prior to retrial because the exhibits were only potentially useful).

The State's control of the evidence is also similar to the Supreme Court cases requiring a finding of bad faith. The State's tests are similar to those in *Trombetta*. The photographs and measurements made by the State's expert have at least the same high degree of accuracy in measuring the raw data that the breath test had in *Trombetta*. As in *Trombetta*, the availability of the measurements and photos allowed defendant to knowledgeably examine the State's expert. The measurements and photos were available to defendant and his expert, and unlike *Newberry* and *Coleman*, the credibility of defendant's expert was not undermined by his lack of access to the raw data. Moreover, in contrast to *Coleman*, the vehicles were never possessed by the State as the State only placed a hold on the vehicles until Trooper Stalker's inspection. Unlike with a controlled substance, the State should not be regarded as having notice of a need to preserve the vehicles. There was no violation of due process by the loss of evidence.

(Doc. 12-6, pp. 2-4.)

At the time of his conviction, *Youngblood* and *Trombetta* were controlling federal law. In *Youngblood*, the U.S. Supreme Court upheld the conviction of Youngblood for child molestation, sexual assault, and kidnaping, despite the State's failure to preserve a semen sample on the victim's

clothes by not refrigerating them. The Court held that while the "good or bad faith of the State [is] irrelevant when the State fails to disclose to the defendant material exculpatory evidence," destruction or failure to preserve only "potentially useful" evidence does not constitute a denial of due process of law unless a criminal defendant can show bad faith on the part of the police. *Youngblood*, 488 U.S. at 57.

Similarly, in *California v. Trombetta*, the Supreme Court upheld the State's policy of keeping the breathalyzer analysis results but disposing of actual breath samples in drunk driving cases. The Court held that the constitutional duty to preserve evidence is limited to evidence possessing "an exculpatory value that was apparent before the evidence was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489.

Under Illinois law, the loss or destruction of evidence may be a denial of due process even if no bad faith existed if the evidence was essential to establishing the defendant's guilt or innocence. *Newberry*, 652 F.3d at 291. The Illinois Appellate Court, however, distinguished Petitioner's case from the class of cases in which no showing of bad faith is necessary to establish a due process violation because the wrecked cars were only "potentially useful" to Petitioner.

The Appellate Court of Illinois found that Petitioner's expert witness had access to accident records kept and tests performed by the State, and he was able to draw conclusions and contest the accuracy of the State's test results at trial. Based on these findings, the Court held that the evidence was not of material exculpatory value, but was only "potentially useful" to the Petitioner. The appellate court identified the controlling federal law, and in applying that law found that the lost or destroyed evidence was only potentially useful. Therefore, based upon *Youngblood* and *Trombetta*

the Illinois Appellate Court found that there was no due process violation. This finding is not objectively unreasonable. This court finds, accordingly, that the appellate court's holding was not contrary to or an unreasonable application of clearly established federal law. It is thus **RECOMMENDED** that Ground 2 of the petition be **DENIED**.

## CONCLUSION

In summary, it is **RECOMMENDED** that Grounds 1 and 2 of the petition be **DENIED** on their merits and that Ground 3 be **DENIED** without review on the merits because it has been procedurally defaulted, and Petitioner has not shown cause or prejudice to excuse the default.

For the reasons set forth above, it is **RECOMMENDED** that the Petition for a Writ of Habeas Corpus filed by the Petitioner on March 31, 2006, (Doc. 1) be **DENIED**, that this matter be **DISMISSED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have ten (10) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: August 27, 2009**

s/<i>Donald G. Wilkerson</i><br>
**DONALD G. WILKERSON**<br>
**United States Magistrate Judge**